Robert PITTMAN and Marvin Dodd (Plaintiffs), Respondents,

v.

A. J. FARON (Defendant), Appellant.

No. 29983.

St. Louis Court of Appeals.

Missouri.

Sept. 2, 1958.

Max Oliver, Montgomery City, for appellant.

Bond & Dominique, John O. Bond, P. Pierre Dominique, Jefferson City, J. F. McVey, Montgomery City, for respondents.

JAMES D. CLEMENS, Special Judge.

Suit by lessees for judgment declaring the status of a mining lease. The defendant-lessor claimed the lease had been forfeited, but the trial court declared the lease still in force, and defendant-lessor appeals, claiming here (1) that the case was not the proper subject of a declaratory judgment action, and (2) that he was entitled to a jury trial.

By a second count of their petition the plaintiffs sought to enjoin defendant from interfering with their entry upon the land. That count was ruled against plaintiffs, but no appeal was taken, so it is not now before us.

The plaintiffs were in the clay mining business, and the defendant owned a farm on which there were clay deposits. On March 3, 1952, defendant executed a lease to plaintiffs granting them the rights of prospecting for clay and, if suitable deposits were found, for mining clay on a royalty basis. The issues here revolve around the annual payments due the defendant by the plaintiffs under the lease, which provided, insofar as now material:

In consideration of $10 paid to defendant he leased his farm to plaintiffs for ten years, beginning March 3, 1952. The plaintiffs were granted the exclusive right to prospect for and mine clay, and the royalties for mined clay were specified. Of particular concern here are the following provisions:

"In Consideration of the foregoing payment and of the agreements hereby evidenced, Lessees are granted the right to cancel this lease, in the manner hereinafter set forth, at any time within a period of Two (2) years from date of this contract without further liability hereunder. Lessees shall be deemed to have elected to cancel said lease unless it shall pay to Lessor, within said last above designated period, the sum of Ten ($10.00) Dollars, as advance royalty, and it is agreed and understood that the Lessees shall have the option of renewing this agreement on the same terms and conditions as set forth for a period of ten (10) years or such time as all of the merchantable clay may be mined and exhausted. If said payment of advance royalty shall be made as above specified, then this lease shall continue throughout the remainder of its term. If, however, said payment shall not be made within said period, this lease shall forthwith terminate.

"Any payment to Lessor provided for herein may be made by check of Lessees, payable to Lessor, deposited in the United States mail, prepaid and addressed to Lessor at Wellsville, Missouri."

We believe a fair construction of the lease, as written, would be that although it was for a ten year term, it was to be automatically terminated at the end of the first two years unless the plaintiffs paid defendant an additional sum of $10 within that time. However, as will hereafter appear, the parties treated the lease as requiring *annual* renewal payments of $10. The defendant received the initial $10 payment, and a similar $10 payment made March 2, 1953. The plaintiffs claimed and the defendant denied by his answer that timely payment of $10 was made on March 1, 1954.

By their fourth amended petition, the plaintiffs pleaded the lease, the intention that there be *annual payments* of $10, the making of such $10 payments in March of 1952, 1953 and 1954, and that "ever since on or about the 7th day of March, 1954, defendant has refused to accept any rent and has refused to permit plaintiffs, their agents, servants or employees to enter upon said land for exploring or mining purposes; that a dispute has arisen between plaintiffs and defendant as to whether the defendant has the legal right to forfeit said lease," and plaintiffs prayed for a "declaratory judgment to determine the rights, duties, and status of the parties under said written lease." To this, defendant answered only by a general denial. After a denial of defendant's motion for a jury trial, the case went to trial.

Plaintiffs produced evidence as to the execution of the lease, their prospecting operations, and the defendant's acceptance of their initial $10 check in March of 1952 and their second $10 check in March of 1953. Plaintiff Pittman testified that on March 1, 1954, he duly mailed a third $10

check to defendant but that the check was never cashed nor was the letter of transmittal answered or returned. On cross-examination, Pittman said that in negotiating with defendant initially: "Mr. Faron was the man that said he would like to have eight and twelve cents a ton on his clay, *and ten dollars a year, and I agreed to it.*" Upon plaintiffs' objection that defendant was seeking to vary the terms of the written lease, defendant's counsel said: "Your Honor, I am attempting to show by this witness that his intent was to pay the sum of ten dollars each year and that if such sum was not paid, the lease would automatically terminate." This testimony by plaintiff Pittman followed the petition, and by the statement of defendant's counsel, it appears that it was the trial theory of both sides that plaintiffs were obligated to make annual payments of $10 to defendant. Pittman further testified that on March 22, 1954, after learning that defendant had disclaimed receiving the 1954 $10 check and was claiming a forfeiture of the lease, he mailed another $10 check to defendant, which was returned uncashed by defendant. Again in March of 1955, defendant failed to cash plaintiffs' $10 check, and before the trial plaintiffs paid $40 into the court's registry, covering payments for the years 1954, 1955, 1956 and 1957.

At this point of the trial, the defendant applied for and was liberally given leave to file an amended answer, and the cause was continued until the following month for further hearing. By his amended answer, defendant challenged the propriety of an action for declaratory judgment, asserted a right to trial by jury, admitted execution of the lease and the mutual intention that $10 payments be made annually, denied that such payments had been made, claimed the lease was so vague as to be unenforceable, and denied the other allegations of the petition. When the trial was resumed there was further evidence by plaintiffs that early in March, 1954, defendant claimed he had received no payment for that year, forbade plaintiffs to come on

his land, and refused to accept further $10 payments tendered by plaintiffs.

Defendant offered no evidence.

The trial court found for plaintiffs, ruled that the parties intended that annual payments be made by March 3rd of each year of the lease term, that plaintiffs had made such payments, and that the lease had not been forfeited and was still in full force.

■ Defendant's first point here is the abstract statement: "Declaratory judgment actions do not supplant nor displace existing remedies but are designed to supply former deficiencies in the law where no adequate remedy exists." This point wholly fails to conform to Supreme Court Rule 1.08, 42 V.A.M.S., which requires that a point of error on appeal "briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely state why it is contended the Court was wrong in any action or ruling sought to be reviewed." The point presents nothing for our review under the rule. Weekley v. Wallace, Mo.App., 314 S.W.2d 256.

■ In the "Argument" portion of defendant's brief there are seven printed pages, all under a single sub-title, "Point I," although defendant's "Points and Authorities" contain six separate points relied on. The "Argument" does not follow the order of the points relied on, either by sub-title designation or in context. We have decided however to consider defendant's appeal, even though he has failed to follow Supreme Court Rule 1.08(a) (4), 42 V.A.M.S., which requires "An argument which shall substantially follow the order of 'Points Relied On.'"

It will clarify our ruling of defendant's claims of error to point out that different sets of issues were presented to the trial court at each of the two phases of the trial. When the trial began, there was the petition and defendant's general denial. Among the issues then for determination

were the plaintiff's respective obligations to make annual payments under the written lease and under the lease as it was intended to have been drawn. At that time, defendant stood before the court denying that there was such a lease, and denying any intention that there be annual payments. At the adjourned hearing, both those facts were admitted by defendant's amended answer, and the defendant's only challenge to the merits was that the 1954 annual payment had not in fact been made.

■ The defendant claims the trial court erred in rendering a declaratory judgment because there was no issue as to the construction of a contract, but merely an issue of fact. The core of defendant's argument seems to be that when he amended his answer, after the trial was under way, the issues concerning the construction of the contract dropped out of the case and left only the issue of fact as to whether plaintiffs had made the required payment due March 3, 1954. To rule this point we will assume without deciding, that this single fact issue of payment raised nothing properly for determination by a declaratory judgment action. Section 527.120 RSMo 1949, V.A.M.S., sweepingly declares the scope of our Declaratory Judgment Act thus: "This law is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." A proceeding for a declaratory judgment is equitable by historical affinity. Hudson v. Jones, Mo.App., 278 S.W. 2d 799; Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 955, 130 S.W.2d 945, 125 A.L. R. 1149; Borchard on Declaratory Judgments, 2d Ed., p. 399. In its inception, this action presented issues of construction of the lease, its intended reformation, and the prevention of a forfeiture. Those equitable issues were all before the court until the filing of defendant's tardily amended answer. It is a fundamental principle of equity that when equitable jurisdiction once attaches it will remain for all purposes connected with the principal controversy. Godwin v. Graham, 360 Mo. 418, 228 S.W. 2d 789. The test of equitable jurisdiction is based upon the issues at the time the action is commenced, and jurisdiction will not be defeated by subsequent changes, even though equitable relief might thereby be rendered unnecessary. See 30 C.J.S. Equity § 74, p. 430; and the Supreme Lodge Knights of Pythias v. Dalzell, 205 Mo.App. 207, 223 S.W. 786. Accordingly, we rule that even after the amendment the controversy presented proper issues for determination by a declaratory judgment.

■ Defendant claims that the trial court erred in refusing him a trial by jury. No cases are cited nor argument advanced in support of this point. Defendant requested a jury trial prior to his amended answer, at a stage of the case when the issues were equitable. "Where the claim is equitable in nature, the parties are not entitled to a jury trial * * *." 26 C.J.S. Declaratory Judgments § 155, p. 366, and see Durwood v. Dubinsky, Mo., 291 S.W.2d 909, 915.

■ Defendant contends the court erred in rendering a declaratory judgment which "did not nor could not dispose of all the issues between the parties." Defendant relies on Section 527.050 RSMo 1949, V.A. M.S., which authorizes a court to decline to enter a declaratory judgment which would not terminate the uncertainty or controversy. In this case the court determined that the lease had not been forfeited and was still in full force. That was the only "uncertainty or controversy" between the parties, and it has properly been put to rest by the declaratory judgment. This statement should also suffice to rule defendant's remaining claim of error that there could be no declaratory judgment because there was "no justiciable controversy * * presenting issues ripe for determination." At the moment the defendant forbade the plaintiffs' entry to the leased lands because of the claimed forfeiture, there was born a live, vigorous controversy, crying for

determination. See Parker v. School Dist. of Maplewood, Mo.App., 271 S.W.2d 860, 864. Defendant's cited case of City of Joplin v. Jasper County, 349 Mo. 441, 161 S.W.2d 411, ruled a situation where it was impossible to determine the relative duties of overlapping public agencies in variable factual situations, and is thus clearly distinguishable.

The defendant offered no evidence in denial of plaintiffs' proof of timely payment of rental payments due under the lease, nor does he challenge such finding here. Accordingly, we rule that the judgment below was proper in declaring that plaintiffs had not forfeited the lease. The judgment should be affirmed, and it is so ordered.

RUDDY, P. J., and ANDERSON, J., concurs.